UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | CR. NO. 3:25-MJ-00026 |
| v. | : | (JUDGE MANNION) |
| **JUAN NIETO SANCHEZ,** | : | |
| | : | |
| **Defendant.** | | |

## MEMORANDUM

Today, the Court faces a decision that lies at the heart of our criminal justice system: whether to detain a defendant pending trial. Despite how frequently federal judges are called upon to make this determination, it is no less significant. The Bail Reform Act of 1984 governs these decisions, embodying a careful and complementary balance of procedural and substantive protections for those accused of crime and presumed innocent under the Constitution. Upon motion from the Government pursuant to the aforesaid statute, Defendant Juan Nieto Sanchez has been ordered detained pending his trial on the charge of illegal re-entry into the United States after removal, in violation of 8 U.S.C. §1326(a). Mr. Nieto Sanchez now moves to revoke that pretrial detention order pursuant to 18 U.S.C. §3145 and requests pretrial release. (Doc. 21). For the reasons that follow, Mr. Nieto Sanchez's motion shall be granted in part.

I. **Background**

Mr. Nieto Sanchez, a Mexican citizen, was arrested in Scranton, Pennsylvania, and charged by complaint with illegal re-entry pursuant to 8 U.S.C. §1326(a). This statute criminalizes the act of reentering the United States without authorization after being previously deported or removed. *Id.*

The arrest occurred during a routine carpool to work when Mr. Nieto Sanchez and three co-workers were stopped by agents from the Bureau of Immigration and Customs Enforcement ("ICE") as part of a targeted operation focusing on another passenger in the vehicle. Although he was not the primary target, Mr. Nieto Sanchez was nonetheless taken into custody and charged pursuant to the complaint described above.

Mr. Nieto Sanchez had been previously arrested by the United States Border Patrol on March 27, 2013, and processed for removal from the United States. However, approximately five years ago, he allegedly reentered the United States without authorization and has since built a life in Scranton with his sixteen-year-old son. Beyond his son, his close-knit family includes his sister, niece, two nephews, and other relatives, all of whom live in the Scranton area. He has no criminal record and, for several years prior to this arrest, worked at a stone quarry and as a dishwasher at a restaurant. His family and employers have described him as dependable, emphasizing

qualities that suggest he was a positive and contributing member of his community.

On May 8, 2025, an initial appearance was held whereby the Government moved for detention.[1] The defense opposed the motion, arguing that the Government failed to satisfy its threshold burden of demonstrating "a serious risk that [Mr. Nieto Sanchez] will flee" pursuant to 18 U.S.C. §3142(f)(2)(A). The Magistrate Judge concluded that the Government demonstrated a serious risk that Defendant will flee, justifying a detention hearing, on the basis of the following:

1) **Imminent Deportation**: Mr. Nieto Sanchez was facing an ICE detainer, and if released, he would enter the custody of ICE and likely be deported.

2) **Nature of the Charge:** Due to being charged with illegal reentry after removal, Mr. Nieto Sanchez was deemed just as capable of entering the country covertly as escaping it, heightening his risk of evading prosecution.

---

[1] A court reporter was not present in court for the initial appearance. Due to the poor quality of the recording, no transcript was prepared.

3) **Associations with Undocumented Individuals:** The Magistrate Judge was troubled by Mr. Nieto Sanchez's connections to other undocumented individuals, including his brother.

Consequent to the Magistrate Judge's finding, a detention hearing was held on May 14, 2025, whereby the Magistrate Judge found that the Government had established that no condition or combination of conditions would reasonably assure Mr. Nieto Sanchez's appearance at future proceedings. (Docs. 17 and 25). In support of the aforesaid finding, the Magistrate Judge stated the following:

> [A]s I noted at the initial appearance when addressing whether he presents a serious risk of flight, and as I will reiterate here today, it shows the Court that Mr. Nieto Sanchez has demonstrated an ability to illegally cross a country's border on at least two occasions. … [I]t's important to consider that not only has Mr. Nieto Sanchez demonstrated the ability to allegedly cross a country's border illegally twice, but it also shows that any risk of flight isn't just about whether he could recross the border and go to another country, but it's also a matter of whether he could flee to another domestic location to avoid facing charges here today.

(Doc. 25). Upon consideration of Mr. Nieto Sanchez's ties to the community and his employment within the Scranton area, the Magistrate Judge stated the following:

- 4 -

> when an individual is able to relocate to another area illegally, a foreign area, nonetheless sustain himself in new surroundings perfectly well after he's already been deported and told not to re-enter that place without permission, that gives rise to a significant risk that he could simply do so again, and not necessarily crossing a border into another country, but also simply crossing a state border to go to another place where he might disappear and yet again restart and resume a life that he has already demonstrated to be able to do in foreign surroundings. It likewise goes to the unlikelihood of him abiding by any conditions and appearing to answer these criminal charges in the future.

(*Id.*). The Magistrate Judge also took into account that Mr. Nieto Sanchez was found in the company of three other individuals in the country illegally, his ties to a foreign country—particularly another child residing in Mexico— and his brother's ongoing deportation proceedings. According to the Magistrate Judge, these factors contributed to a significant risk of nonappearance, one that no set of conditions or combination of conditions could adequately address. Regarding the detainer, the Magistrate Judge acknowledged that it was a factor in assessing whether Mr. Nieto Sanchez would likely appear in the future. However, he also emphasized that even without the detainer or its consideration, "the other factors [he has] reviewed here, as well as [at] the initial appearance, do give rise to a serious risk of flight and weigh against release." (*Id.* at 6-7). Following the detention

- 5 -

hearing, Defendant filed the instant motion seeking to revoke the detention order and his release pending trial. (Doc. 21). Both parties have filed their briefs, and the motion is now ripe for disposition.

## II. Standard of Review

The Bail Reform Act of 1984, 18 U.S.C. §3141, *et seq.* (the "BRA"), governs release and detention pending judicial proceedings. This Court has jurisdiction to review *de novo* a magistrate judge's pretrial detention order, *see United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985), pursuant to 18 U.S.C. §3145(b), which provides:

> If a person is ordered detained by a magistrate judge, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court, the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order.

"*De novo* review does not require an additional evidentiary hearing[,]" and the district court "may make its independent determination based solely upon the evidence introduced at the prior hearing." *United States v. Burgess*, 2009 WL 2038148, at *2 (W.D. Pa. July 8, 2009)); *see also United States v. Bastianelli*, 2018 WL 1015269, at *4 (W.D. Pa. Feb. 22, 2018) ("The Court retains the discretion to make its determination after reviewing the record

developed before the Magistrate Judge or to accept additional evidence from the parties and rule on the expanded record.").

In analyzing this issue, we start with the Supreme Court's admonition that, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). "The [BRA] provides one such exception by way of a two-step process through which the government may seek pretrial detention." *United States v. Ibarra*, 2025 WL 27474, at *2 (D. Me. Jan. 3, 2025) (citing 18 U.S.C. §§3142(f), (g)). The Government's burden at both steps is "the preponderance of the evidence." *United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986).

At the first step, upon the Government's motion, a magistrate judge will determine at a defendant's initial appearance if a detention hearing is authorized under the BRA. 18 U.S.C. §3142(f). This initial determination "limit[s] the circumstances under which [pretrial] detention may be sought." *United States v. Watkins*, 940 F.3d 152, 158 (2d Cir. 2019) (citations omitted). To that end, the court only may grant the Government's motion for a detention hearing if the defendant: (1) is charged with one of five categories of serious crimes in §3142(f)(1); (2) poses a serious risk of flight under §3142(f)(2)(A); or (3) poses a serious risk of obstruction or intimidation under

§3142(f)(2)(B). *See Himler*, 797 F.2d at 160 ("[I]t is reasonable to interpret the statute as authorizing detention only upon proof of a likelihood of flight, a threatened obstruction of justice or a danger of recidivism in one or more of the crimes actually specified by the bail statute."); *United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("A hearing can be held only if one of the [ ] circumstances listed in (f)(1) and (2) is present...."); *Ibarra*, 2025 WL 27474, at *2 (citing 18 U.S.C. §3142(f)). Absent one of these conditions, the Government's motion for a detention hearing will be denied. *See Himler*, 797 F.2d at 160 ("[T]he requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial.") (citation omitted). Accordingly, "[§] 3142(f) serves an important gate-keeping function, by preventing even the *opportunity* to seek detention in all but a certain, narrow subset of cases." *United States v. Subil*, 2023 WL 3866709, at *4 (W.D. Wash. June 7, 2023) (emphasis in original) (internal quotation marks and citation omitted).

At the second step, if the Government establishes eligibility to seek pretrial detention under §3142(f), the court will then conduct a detention hearing under §§3142(e) and (g) to determine whether detention is warranted. *See United States v. Ailon-Ailon*, 875 F.3d 1334, 1336-37 (10th Cir. 2017). Following the hearing, detention must be ordered if the judicial

officer finds that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. §3142(e)(1). In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of the community, the judicial officer must consider the factors set forth in §3142(g).

### III. Discussion

#### A. Meaning of the Term "Flight"

At step one of the process pursuant to which pretrial detention may be sought, the Government argued at the Initial Appearance that the Defendant posed a serious risk of flight under 18 U.S.C. §3142(f)(2)(A). This assertion was based on the imminent threat of the Defendant's deportation upon release to ICE custody, the nature of the charges against the Defendant, and his associations with undocumented individuals. The Magistrate Judge concurred with the Government's assessment, *see supra* at 3-4, determining that the Defendant posed a serious risk of flight warranting a detention hearing to establish whether there is "no condition or combination of conditions [that] will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community." 18 U.S.C. §3142(e)(1). In seeking to vacate the pretrial detention order, Mr. Nieto

Sanchez argues that he cannot "flee" within the meaning of §3142(f)(2)(A) with an ICE detainer lodged against him because the plain meaning of "flight" as used in the BRA requires voluntary conduct on his part. The Court agrees on this issue.

The BRA does not define "serious risk of flight," nor does it specify factors for courts to consider in analyzing whether there is a serious risk that a defendant will flee. *See Id.* Furthermore, neither the Supreme Court nor the Third Circuit Court of Appeals have outlined factors to consider in analyzing a serious risk of flight under §3142(f)(2)(A). Importantly, whether the likelihood of imminent, *involuntary* removal by ICE constitutes "a serious risk of flight" under this provision is an issue of first impression within the Third Circuit—as it is in several other circuits nationwide. However, our sister court in the Eastern District of Pennsylvania has addressed this precise question in *United States v. Gonzalez*, 2025 WL 1208682 (E.D. Pa. Apr. 25, 2025), and its reasoning is persuasive.

In *Gonzalez*, the court began by examining the plain meaning of "flight," since neither the BRA nor §3142 defines it. 2025 WL 1208682, *3-4; *see also Burton v. Schamp*, 25 F.4th 198, 207 (3d Cir. 2022) ("statutory interpretation begins with an examination of the statute's plain language.") Consistent with precedent interpreting statutory language, the court

determined that "flight" contemplates voluntary conduct where an individual chooses to "run away," "escape," or "evade" a person, situation, or location. *Id.* at *4. It drew upon dictionary definitions—including Black's Law Dictionary, defining "flee" as "[t]o run away; to hasten off," "[t]o run away or escape from danger… to try to evade," "[t]o vanish;" and "[t]o abandon"—as well as Merriam-Webster, which defines "flee" as "to run away often from danger or evil" or "to hurry toward a place of security." *Id.* (citing Black's Law Dictionary (12th ed. 2024) and Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/flee.").

This Court adopts the above interpretation and holds that *involuntary*, imminent ICE removal cannot qualify as "flight" under §3142(f)(2)(A), because the individual is not acting out of their own volition but being removed by a governmental authority. Even the risk of nonappearance at the second step of the process must involve a level of voluntary intent. *See Gonzalez*, 2025 WL 1208682 at *4; *United States v. Santos-Flores*, 794 F.3d 1088, 1091 (9th Cir. 2015); *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. Jul. 23, 2009); *United States v. Montoya-Vasquez*, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009).

Other courts in different circuits have reached similar conclusions regarding the interpretation of "flight" under 18 U.S.C. §3142(f)(2)(A). For

instance, in *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017), the Tenth Circuit held that a risk of involuntary removal does not establish a "serious risk that [the defendant] will flee" under §3142(f)(2)(A). *Id.* at 1337. The court emphasized that the ordinary meaning of "flee" suggests volitional conduct and that the statute's structure supports this interpretation. *Id.* at 1338. The court noted that one would not describe an individual who has been arrested at a crime scene and involuntarily transported to a police station as having fled the scene. *Id.*

If a defendant subject to an ICE detainer is required to remain detained pending trial or sentencing, *solely* because of that detainer, Congress's meticulously crafted detention framework under 18 U.S.C. §3142 would, in effect, be overridden. In such a scenario, critical factors like community safety, risk of flight, or any individualized court assessment would be cast aside, entirely subsumed by the executive prerogative. Moreover, this amounts to a circular logic whereby one component of the executive branch creates the circumstances—via an ICE Detainer—that justify detention by another component of the executive branch—the U.S. Attorney—thus undermining any meaningful judicial inquiry. Courts have recognized that once the executive invokes Article III jurisdiction, its agencies cannot scheme to circumvent the Bail Reform Act by manufacturing pretrial detention

through inter-agency maneuvering. *See United States v. Soriano Nunez*, 928 F.3d 240 (3d Cir. 2019).

As such, an ICE detainer, without more, does not constitute evidence of a defendant's intent to flee. It merely signals the potential for removal by the executive, not a voluntary act of evasion by the individual. Deportation, unlike flight, is not within the defendant's control and cannot, standing alone, satisfy the standard under §3142(f)(2)(A). To hold otherwise would convert administrative enforcement into a presumption of detention, undermining the individualized assessment the Bail Reform Act demands. For that reason, the Government's reliance solely on an ICE detainer as a basis for finding risk of flight is counter intuitive.

### B. Nature of the Offense and Community Ties

However as noted above, the MJ did not base the serious flight risk finding exclusively on the ICE detainer at the Initial Appearance. He also agreed with the Government that two additional considerations—the nature of the offense charged (illegal reentry) and the Defendant's associations with undocumented individuals—warranted a detention hearing. This court agrees with the decision that a detention hearing was required and at such a hearing, all factors, including the pending charge may be considered on

determining the totality of the circumstances. No doubt, each of these factors carries its own distinct implications that must be examined separately.

Regarding the offense, a charge of illegal reentry after removal—while warranting consideration as noted does not, by itself, establish a categorical presumption of serious flight risk. The BRA sets out five categories of federal offenses where the Government is presumptively entitled to seek pretrial detention at step one of the inquiry. 18 U.S.C.§3142(f)(1). Those include:

> (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
>
> (B) an offense for which the maximum sentence is life imprisonment or death;
>
> (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. §801 *et seq.*), the Controlled Substances Import and Export Act (21 U.S.C. §951 *et seq.*), or chapter 705 of title 46;
>
> (D) any felony if such person has been convicted of two or more offenses described in subparagraphs (A) through (C) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (A) through (C) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; and,

> (E) any felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon, or involves a failure to register under section 2250 of title 18, United States Code.

*Id.* Several of these categories reappear at step two of the pretrial detention analysis in 18 U.S.C. §3142(e)(3), which details certain offenses for which it is presumed that "no condition or combination of conditions will reasonably assure the appearance of the person as required."

In *Gonzalez*, the court carefully construed Congress's findings within the relevant statutory provisions, recognizing that Congress identified specific categories of offenders as posing heightened flight risks—but notably did not include the charge of illegal reentry after removal. *Gonzalez*, 2025 WL 1208682, at *5. This Court concurs with *Gonzalez*'s interpretive reasoning and finds that Congress's omission of illegal reentry from the enumerated categories reflects a legislative judgment that removable aliens, as a category of defendants, are not *presumptively* considered to pose a serious risk of flight. *Id.* (citing *Ailon-Ailon*, 875 F.3d at 1338).

While the Court acknowledges that the nature and circumstances of the charged offense are relevant to assessing flight risk, the offense itself—

when not among those specifically listed in the statute—does not, standing alone, justify a presumption of necessary pretrial detention under 18 U.S.C. §3142(f)(2)(A).

Accordingly, the remaining issue is whether the totality of the personal circumstances, family ties, associations, etc., and lack of criminal history, suffice to establish a serious risk of flight.

Although the Defendant was arrested riding to work with at least one other undocumented individual, the Government has not alleged that he poses any danger to the community; rather, it contends that his ties to the area might be weakened by his brother's deportation. In response, the Defendant has submitted evidence demonstrating the opposite: he is the primary caregiver for his son in the United States, maintains close relationships with his sister, niece, two nephews, and other relatives in Scranton, and has an extensive history of residence and employment in the community, with both family members and employers attesting to his reliability and strong character.

Under §3142(g)(3)(A), the Court evaluates "family ties … length of residence in the community … [and] community ties." On balance, the Court finds that it is unlikely that any other defendant charged with another low grade, non-violent, non-drug related felony, punishable by up to two years,

with no prior criminal history, no record of failing to appear in court, community ties, and is not charged with a presumptive detention charge, would be detained. Accordingly, the Court will grant the motion in part and schedule a renewed detention hearing for **July 31, 2025, at 11:30 a.m**.

### IV. Conclusion

Based on the foregoing, the court will **GRANT IN PART** Defendant's motion. (Doc. 21). An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: July 25, 2025**
25-26-01